## Commonwealth v. Trimble

*Lorry W. Post* and *Goldman & Weinblatt*, for Commonwealth.

*Grace Cohn* and *Lee B. Lansberry*, for defendant.

MONROE, J., December 15, 1961.—On February 15, 1961, Margaret Trimble, wife of defendant, instituted these proceedings against defendant, for the support of herself and five children, under section 733 of the Penal Code of June 24, 1939, P. L. 872, by information made before a justice of the peace of this county, before whom a hearing was held on March 28, 1961, and defendant was bound over to appear before the court of quarter sessions of this county. On June 16, 1961, the justice of the peace filed in the office of the clerk of said court her transcript of the proceedings had before her. On October 6, 1961, the matter came before the undersigned for hearing.

Before proceeding to take testimony, the hearing judge inquired of defendant whether he had counsel, to

which defendant replied "I am taking myself as counsel." Relatrix testified with respect to the liability of defendant for support and his earning capacity. Defendant refused to testify although advised by the hearing judge of the consequences of his failure to do so. At the conclusion of the testimony an order of $90 per week was placed upon defendant for the support of his wife and five children, Robert, Ernest, Daniel, Dolores and Linda, respectively aged 17, 15, 13, 10 and 7 years. Defendant thereupon engaged counsel who, on October 10, 1961, filed a petition for rehearing and for reduction of the order, alleging, as grounds therefor, that defendant was not represented by counsel at the hearing of October 6, 1961, and did not comprehend the nature of the proceedings, that he supported his wife and children, and did not desert them, but rather that his wife deserted him; that he is unemployed, receiving only unemployment compensation of $35 per week and that the amount of the order entered was based upon evidence which did not reflect defendant's true earnings; and that defendant did not fully comprehend the meaning of the court's request that he testify (on his own behalf). Relatrix filed an answer to the petition, in part denying and in part demanding proof of the averments thereof.

The matter came on for hearing before the undersigned on November 17, 1961, defendant appearing personally and by counsel. The undersigned hearing judge refused to grant a rehearing upon the merits of defendant's liability for the support of his wife and family.

The failure of the trial court to provide counsel when none is requested by a defendant charged with a crime other than murder does not deprive defendant of a constitutional right. Commonwealth ex rel. Fitts v. Smith, 158 Pa. Superior Ct. 104, 105 (1945). This defendant chose to act as his own attorney. He argues that he

failed to testify because he was under a misapprehension of the nature of the proceeding. The notes of testimony amply disclose that he well knew that the proceedings were directed toward an order for the support of his family. He had ample time within which to engage counsel and did not. The transcript of the justice of the peace, filed in this court, shows that he requested that Grace Cohn, his present attorney, be notified of the time and place of trial. He did not request that an attorney be appointed as his counsel. He chose to represent himself. He repeatedly refused to testify although given an opportunity to do so, with warning of the consequence of such refusal. To have reopened the case on the merits, under circumstances such as here present, would be establishing a practice which would thwart the expeditious discharge of the court's business and calendar.

From the testimony of the relatrix, taken at the first hearing, it appears that she is 40 years of age and presently employed at a wage of $54.48 net, per week, after deduction of withholding and other taxes and charges. She is residing separate and apart from defendant, having last left the common home in July of 1960, taking with her the children, who are residing with her. She and the children had previously left defendant in January of 1960, but had returned to the common home in an effort of reconciliation, in June of 1960. The reasons for the separations was the conduct of defendant toward relatrix and the children. Defendant's attitude toward his family has been characterized by ill-temper, evidencing itself in cursing his wife and children and in the use of grossly vulgar obscenity when addressing them, with sufficient frequency to be considered as habitual. During the period of attempted reconciliation in June and July of 1960, defendant did not speak to the children except when ordering them about, accompanying the orders with curses and

obscenity, although apparently, he did not inflict brutality upon his family during this period. During the last two or three years, he struck the relatrix four or five times, on one occasion knocking her unconscious and on another breaking her ear drum, requiring medical treatment thereafter. On at least one occasion, he struck the eldest son, Robert, and has so mistreated him that Robert left the home and refused to return.

Defendant has not supported his family in keeping with either his earning capacity or his earnings. Prior to the separation in January 1960, defendant paid the expenses of the maintenance of the common home. But his contributions for the expense of food was limited to from $15 to $18 per week, which he personally bought and which was inadequate. He would not permit relatrix to purchase the required clothes and shoes for his family, and would not permit relatrix to work. During the time the family was reunited in June and July of 1960, relatrix was working. Defendant did not buy the groceries and did not give relatrix money for any purpose, requiring her to use her wages. He banked the proceeds of his unemployment compensation check of $35. The final separation was triggered when defendant took the last $10 relatrix had saved for the purchase of shoes.

A wife who has separated from her husband, when seeking support need not establish facts which would entitle her to a divorce; it is sufficient if she justifies living apart from her husband for any other reason adequate in law: Commonwealth ex rel. Sosiak v. Sosiak, 177 Pa. Superior Ct. 116, 119 (1955), Commonwealth ex rel. Rovner v. Rovner, 177 Pa. Superior Ct. 122, 125 (1955). In the opinion of the hearing judge, the relatrix had adequate legal reason for leaving defendant, not only because of his conduct as to her but also of his conduct as to the children, as well as his failure to support the family.

Although the relatrix took the children with her when she left the common home, defendant is still clearly liable for her support. Commonwealth ex rel. Hitchman v. Hitchman, 5 Bucks 256, 257 (1955).

No direct evidence was introduced to establish the marriage of the relatrix and defendant or that the children named were born of the parties. But, since the complaint filed before the justice of the peace contains allegations to that effect and defendant has not, at any time, questioned the existence of the marriage between himself and relatrix or the parentage of the children, it may, therefore, be presumed that a valid marriage does exist and that the children were born of that marriage.

The weekly expenses of maintenance of relatrix and the five children is $107, which is presently being met from the take home wages of the relatrix and the son Robert, respectively, $54.48 and approximately $55. Defendant has not, since July 1960, contributed anything to the support of his wife and children. During the five week period in June and July of 1960, while the parties were residing together, his contribution was limited to supplying the place of residence, exclusive of food and clothing.

Relatrix' testimony taken at the first hearing, October 6, 1961, supports the conclusion that in 1957 defendant's earning capacity was $4.02 per hour and in 1959 $4.19 per hour, gross, resulting in a 40 hour weekly wage of $160.80 and $167.50, respectively, or $8,361.60 and $8,715.20 per annum for 52 weeks of work each year. Admitted in evidence were two pay statements given defendant by his employers, reflecting the above base pay, but reflecting also substantial deductions therefrom for withheld income and social security taxes. They do not represent a true picture of defendant's net earnings. Defendant was entitled to

seven withholding exemptions (himself, his wife, five children). A comparison of the pay statements against 1960 and 1961 tables in tax guides published by the United States Treasury Department, Internal Revenue Service, indicate that defendant had claimed only two exemptions for withholding tax purposes, and thus the deductions were for social security taxes and Federal income tax, with only two out of seven exemptions claimed. (Relatrix testified that defendant claimed no exemptions and thus had substantial refunds of taxes paid to him by the Federal government each year.) For example, if the payroll withholding tax tables for the year 1961 were applied to a weekly wage of $167.60 (defendant's base pay for 1959), the income tax withheld, after allowing for seven exemptions, would be $13.50 and social security taxes would be three per centum (.03) of the wage or $5.03, thus making total withholding of $18.53 weekly, or $963.56 per year. But the withheld taxes reflected in the exhibits, with only two dependents claimed, would amount to approximately $1,566 ($25.10 income tax plus $5.03 social security tax times 52 weeks) per year. Therefore, a substantial refund would be payable to defendant. For the illustration purposes, we are not taking into consideration the fact that social security taxes are levied only upon the first $4,200 of pay.

Therefore, assuming that defendant's base rate of pay was the same for 1961 as for 1959 (his testimony shows it to be higher), and allowing for deduction of $964 for taxes withheld, an order of $90 per week or $4,680 per year out of net take home pay of $149.07 per week, or $7,751.60 per year, seemed justified by the circumstances, allowing for possible bona fide periods of unemployment during which defendant's income would be reduced to unemployment compensation benefits, and after taking into consideration the

earnings of the relatrix. The son, Robert, was required to leave school in order to help support the family. It is the opinion of the hearing judge that the order should include the support of Robert, as it did, and that no credit should be allowed defendant for Robert's wages, and defendant should not be relieved of Robert's support unless he should voluntarily continue employment. Robert's education should not be forfeited to an irresponsible father.

It appears from defendant's testimony that he is 38 years of age, and physically able to do manual labor. He appeared to be a robust, physically healthy man. He has been engaged for 20 years in construction work, installing pipes in fire prevention sprinkling systems. His present base rate of pay is $4.35 per hour.

His petition states, in support of his prayer for reduction of the order, that he is presently unemployed, his income being limited to unemployment compensation in the amount of $35 per week. His history of employment and unemployment is that during the year 1957 he was employed for ten months; during 1958 for eight and one-half months; during 1959 for six months; during 1960 for six months and during 1961 for two months, being last employed in February of 1961. While unemployed he receives the $35 weekly compensation. Also when unemployed his method of obtaining reemployment is to await leads given to him by his union and by the unemployment compensation authorities. He testified that he interviewed the leads given him but was not accepted for employment because he is considered to be too old for the work; that the Unemployment Compensation Board has given him only three references for work since 1957, and that the union has not called him. He admitted that on his own he does not seek employment in the sprinkler construction trade, because those needing such workmen

employ them only through the union; that he does not consult the help wanted ads because there is nothing listed for his type of work. At one point he testified that the unemployment board had offered work "in the steam line" but that when he interviews the prospective employers he is incapable of the work and is refused. The conclusion is inescapable that defendant has made no sincere effort to obtain employment of any kind, whether of the type for which he is best qualified or otherwise. The hearing judge has concluded that either defendant's vocation is living on the public weal and his avocation is pipe-fitting in the sprinkler construction business, or he has deliberately been withdrawn from income producing work. Neither furnishes a legal escape from his liability to support his family: Commonwealth v. Gleason, 166 Pa. Superior Ct. 506, 510 (1950), Commonwealth ex rel. Wills v. Bonetti, 190 Pa. Superior Ct. 335 (1959). His periods of unemployment seem to keep pace with the family's disintegration. In 1957, according to his own testimony, he worked ten months out of the year; in 1958, it was eight and one-half months of work, and in 1959, six months, at a time when domestic storm was either brewing or already upon the parties, for the relatrix and the children first left him in January 1960. The records in the office of the clerk of this court show that proceedings by relatrix against defendant for the support of herself and the five children were filed in that office on May 18, 1960, and were withdrawn by her on May 27, 1960, which would be shortly prior to the reconciliation of June 1960. Defendant's entire case demonstrates that he is using such means as he considers available to escape liability for support of his family. He has not, by his own admission, at least since July 1960, contributed one cent to their support even though he has been gainfully employed, at times, and, more often, the recipient, of public welfare, since then.

An order of support may be based not only on a husband's actual earnings but on his earning power as well. Commonwealth v. Gleason, supra; Commonwealth v. Williams, 178 Pa. Superior Ct. 313 (1955); Commonwealth ex rel. Spielvogel v. Spielvogel, 181 Pa. Superior Ct. 61 (1956); Commonwealth ex rel. Kreiner v. Scheidt, 183 Pa. Superior Ct. 277 (1957); Commonwealth ex rel. Wills v. Bonnetti, supra; Commonwealth ex rel. Kane v. Kane, 193 Pa. Superior Ct. 98 (1960); Commonwealth ex rel. Weisberg v. Weisberg, 193 Pa. Superior Ct. 204 (1960); Commonwealth ex rel. Warner v. Warner, 194 Pa. Superior Ct. 496 (1961). The relatrix has submitted sufficient competent and convincing evidence of earning power in the defendant to justify the order made. The testimony of defendant is not persuasive to the contrary. His stated reasons for being unable to find or have employment at a wage in excess of his unemployment benefits are incredible. His testimony lacks conviction that he has made bona fide efforts to obtain employment and that his excuses for his failure to support his family are bona fide. Consequently his petition for reduction lacks good faith. Therefore, since the record discloses that defendant had not, at the time of the hearing of November 17, 1961, paid any sum on the order made October 6, 1961, the hearing judge was then and is now of the opinion that his refusal to reduce the order of October 1961 was justified. Compare: Commonwealth ex rel. Berardino v. Berardino, 96 Pa. Superior Ct. 288 (1929). Further, having examined carefully the transcript of defendant's testimony, the hearing judge is of the opinion that defendant has failed to present any convincing evidence which would establish a basis for determining that his earning power is such as to warrant a reduction of the present order.

It is directed that the foregoing opinion be filed and made a part of the record in the above captioned case,

in compliance with rule 43 of the Pennsylvania Superior Court, as a statement of the reasons for the order entered October 6, 1961, the refusal of the court on November 17, 1961, to grant a rehearing upon the merits of defendant's liability for support, and for the refusal at the conclusion of the hearing of November 17, 1961, to reduce the order made October 6, 1961.